WEIR & PARTNERS LLP
By: Walter Weir, Jr., Esquire
    Amy R. Brandt, Esquire
The Widener Building
1339 Chestnut Street, Suite 500
Philadelphia, PA 19107
215-665-8181
215-665-8464 fax
wweir@weirpartners.com
abrandt@weirpartners.com
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SONDRA BUSCH<br>7253 Queenferry Circle<br>Boca Raton, FL 33496<br><br>　　　　　Plaintiff<br><br>　　v.<br><br>ALLAN DOMB<br>1845 Walnut Street, Suite 2200<br>Philadelphia, PA 19103<br><br>　　　　and<br><br>ALLAN DOMB REAL ESTATE, INC.<br>1845 Walnut Street, Suite 2200<br>Philadelphia, PA 19103<br><br>　　　　　Defendants | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: Civil Action No. |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Sondra Busch, by and through her undersigned counsel, Weir & Partners LLP, brings this Complaint against Defendants, Allan Domb and Allan Domb Real Estate, Inc., and avers:

1

## PARTIES

1. Plaintiff Sondra Busch is citizen of the State of Florida residing at 7253 Queenferry Circle, Boca Raton, Florida 33496.

2. Defendant Allan Domb ("Domb") is a citizen of the Commonwealth of Pennsylvania having an office and place of business at the above captioned address. At all times relevant herein, he was and is a real estate broker licensed under the laws of the Commonwealth of Pennsylvania.

3. Defendant Allan Domb Real Estate, Inc. ("ADREI") is a business corporation duly organized and existing under the law of the Commonwealth of Pennsylvania and is engaged in the real estate brokerage business including arranging the sale, purchase, renting or management of homes, land and/or buildings, with a principal place of business at 1845 Walnut Street, Suite 2200, Philadelphia, Pennsylvania 19103. ADREI is an organization licensed as a real estate broker under the laws of the Commonwealth of Pennsylvania.

4. At all times material hereto, Domb acted as the agent, servant and employee of ADREI within the scope and authority of his employment.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this matter under and pursuant to 28 U.S.C. §1332, there being diversity of citizenship between Plaintiff and the Defendants, and the amount in controversy exclusive of interest and costs exceeds $75,000.

6. Venue is proper in this district as the Defendants can be found in and the transaction or occurrences out of which these causes of action arise occurred in and are related to real property located in this district. Specifically, this action arises out of Defendants' real estate brokerage services provided to Plaintiff with respect to the sale of her home at 212 Delancey Street, Philadelphia, Pennsylvania ("Property").

## FACTS COMMON TO ALL COUNTS

7. On or about April 4, 2016, Plaintiff and Defendants entered into a Listing Agreement whereby Defendants agreed to be the real estate broker and licensee to sell Plaintiff's home at 212 Delancey Street in Philadelphia (the "Property").

8. On or about April 4, 2016, Defendants began to advertise the Property on their website and in a real estate broker's Multiple Listing Service for $895,000.00.

9. A copy of the Listing Agreement has not been attached hereto because a copy cannot be found by Plaintiff.

10. Defendants recommended to Plaintiff that she list the Property for $895,000.00; which Plaintiff agreed to do and thereafter, Defendants recommended lowering the listing price to $875,000.00, which Plaintiff did.

11. In or about August 2017, Defendants brought buyers, Javier Kuehnle ("Kuehnle") and Sandra Duggan ("Duggan") (collectively, "Buyers"), to Plaintiff with an offer of $675,000.00.

12. Although it was substantially below the list price, Defendants counseled Plaintiff to accept the Buyers' offer. Defendants justified the price reduction by advising Plaintiff that the Buyers "wanted to live on Delancey Street," but that they needed to make improvements of at least $200,000.00 to update the home and that no one who intended to reside in the Property would purchase it without the price reduction.

13. Accepting Defendants' advice and relying on their expertise and her trust of Domb, Plaintiff reluctantly agreed to sell the Property to Defendants' Buyers for $675,000.00.

14. Plaintiff, as Seller, entered into a Standard Agreement for the Sale of Real Estate with the Buyers ("Agreement of Sale") on August 17, 2016 for the Property, for the sum of $675,000.00. A true and correct copy of the Agreement of Sale is attached hereto as Exhibit "A".

15. ADREI was designated as the Broker and Domb as the Licensee for both the Buyers and the Seller.

16. Defendants' dual agency was disclosed and consented to by Plaintiff and Buyers; A Consumer Notice pursuant to the Real Estate Licensing and Registration Act ("RELRA") was attached to the Agreement of Sale in which the dual agent's obligation to each the Seller and the Buyers was described: "As a dual agent, the licensee works for both the seller/landlord and the buyer/tenant. A dual agent may not take any action that is adverse or detrimental to either party . . . ." A true and correct copy of the Consumer Notice is attached hereto as Exhibit "B".

17. Further, the licensee is obligated to, among other things, "[e]xercise reasonable professional skill and care which meets the practice standards required by the RELRA. Deal honestly and in good faith . . . . Disclose, as soon as practicable, all conflicts of interest and financial interests." Id.

18. The Agreement of Sale at paragraph 12 provided that the Buyers had the right to conduct a home inspection. Thus, Buyers engaged a home inspector, David Bollinger of ValueGuard Home Inspections, whose August 26, 2016 inspection report revealed items to be addressed. Based upon that report, Domb advised Plaintiff that the Buyers wanted a $75,000.00 price reduction but that he strongly recommended that she reduce the price by $25,000.00.

19. Plaintiff disagreed with the inspection results. She criticized the report in writing. Despite that, based upon Domb's recommendation and her trust in him, she reluctantly agreed to lower the sale price by $25,000.00 to $650,000.00.

20. The sale of the Property occurred on November 10, 2016.

21. Approximately ten days after the closing, Plaintiff's daughter suggested that Plaintiff look at Defendants' website. Upon doing so, Plaintiff discovered that Defendants had re-

listed the Property for sale on behalf of the Buyers for $875,000.

22.  Thereafter, Plaintiff contacted her attorney who had attended closing and learned, for the first time, that: (1) the Buyers had no intention of residing in the Property, but rather intended to use the $200,000.00 savings to re-do the interior and re-sell the Property; and (2) that Defendants had represented the Buyers many times in the past as the Buyers were active in the real estate investment business.

23.  The listing made no mention of the sale from Plaintiff to the Buyers several days before, but rather only reflected a last sale date of 1978 (for $140,000.00). The listing also referenced $25,000.00 in recent improvements (although Plaintiff is unaware that any had actually been made as of the date of the listing).

24.  Shocked by this news, Plaintiff called Domb but did not get to speak with him. On November 29, 2016, Domb left a voicemail for Plaintiff (returning her call) informing her that the Buyers intended to re-sell the home, but still represented that the Buyers would be spending $200,000.00-$300,000.00 in improvements.

25.  Then, with the Property back on the market for only 19 days, the Buyers entered into a new Agreement of Sale on December 12, 2016 for $875,000.00, the very same sale price Plaintiff sought and Defendants advised her to reduce by $225,000.00 so she could sell the Property.

26.  The new sale closed on February 17, 2017, within three months of Plaintiff's sale, and upon information and belief, without the Buyers making any of the alleged needed improvements (either the $25,000.00 or the $200,000.00.)

27.  Thus, despite Defendants' professional recommendation that she sell her home for $650,000.00, the market value of the Property house was in fact at least $875,000.00.

28. Further, despite Defendants' representations that the Buyers intended to reside in the home, Defendants knew that the Buyers intended to "flip" the Property.

29. Defendants further failed to disclose to Plaintiff that they had a financial interest in the transaction as they would be re-listing the Property for sale and had the opportunity to earn a second commission on the flip.

30. Defendants also did not disclose that they had a long-standing business relationship with the Buyers and that they knew that the Buyers engaged in the business of buying and selling real estate for a profit.

31. Plaintiff would not have agreed to either the $200,000.00 or $25,000.00 price reductions if she has known that the sale price was actually below market value, that the reductions were intended solely to allow the Buyers to make a profit on the transaction, and were intended to allow Defendants to earn a second commission on the re-sale.

32. Defendants are and were well-aware that they are obligated to a Seller to make sure any offer is fair and that in general sellers need to exercise caution being wary of speculators trying to quickly flip properties. Defendants are and were well-aware that even if a property owner needs to sell, they still have an affirmative obligation to confirm that an offer is fair.

## COUNT I – Consumer Fraud (UTPCPL)

33. Plaintiff incorporates herein by reference paragraphs 1 thru 32 above as if set forth at length herein.

34. The actions of Defendants violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 P.S. Section 201- et seq.

35. The UTPCPL permits an action to be maintained by any person who purchases or leases good or services and suffers any ascertainable loss as a result of the use or employment of

a method, act, or practice declared unlawful.

36. The UTPCPL catchall provision, §201-3, protects consumers from "advertising, offering for sale, sale or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situate, and includes trade or commerce directly or indirectly affecting the people of this Commonwealth."

37. Real estate brokerage services are a service within the purview of the UTPCPL.

38. Defendants' conduct *vis-à-vis* their brokerage services for the sale of 212 Delancey Street was deceptive and in particular, created a misunderstanding and confusion with respect to the sales price of Plaintiff's home and her trust of Defendants as her selling agent.

39. As a result of Defendants' unlawful conduct, Plaintiff suffered actual damages.

WHEREFORE, Plaintiff seeks judgment against Defendants, jointly and severally, for compensatory damages in excess of $75,000.00, treble damages in excess of $500,000.00, attorneys' fees pursuant to UTPCPL, costs of suit, interest and such other relief as the Court deems necessary or proper.

## COUNT II – Breach of Fiduciary Duty

40. Plaintiff incorporates herein by reference paragraphs 1 thru 39 above as if set forth at length herein.

41. At all times material to the events raised herein, Defendants owed a fiduciary duty to Plaintiff not take any action that was adverse to Plaintiff.

42. Defendants had a duty to deal with Plaintiff honestly and in good faith.

43. Defendants had a duty to Plaintiff to disclose all of their financial interests in the transaction.

44. Defendants breached their fiduciary duties to Plaintiff by counseling Plaintiff to sell

the Property at a price significantly lower than its market value, while failing to disclose their on-going relationship with the Buyers, and the Buyers' regular practice of and intention to flip the property.

45. Defendants breached their fiduciary duties to Plaintiff by counseling Plaintiff to agree to lower the sales price by an additional $25,000.00 based upon the inspection report, to her detriment and to the benefit of the Buyers who would profit from the lower price.

46. Defendants further failed to disclose that they would be representing Buyers in their subsequent sale of the Property such that Defendants would earn a second commission on the sale, and thus failing to disclose their financial interests in the transaction.

47. Further, in each of these ways, Defendants failed to deal honesty and in good faith with Plaintiff, all to her damage and loss.

48. As a direct and proximate result thereof, Plaintiff suffered damages in the loss of the differential between the fair market value of the Property and the sales price, together with her costs including the commission paid to Defendants.

WHEREFORE, Plaintiff seeks judgment against Defendants, jointly and severally, for compensatory damages in an amount in excess of $75,000.00, costs of suit, interest and such other relief as the Court deems necessary or proper.

## COUNT III – Negligent Misrepresentation

49. Plaintiff incorporates herein by reference paragraphs 1 thru 48 above as if set forth at length herein.

50. Defendants misrepresented to Plaintiff that $675,000.00 was a fair price for the Property, knowing full well that the Property's real value was $875,000.00.

51. Defendants further misrepresented that it was necessary for Plaintiff to reduce the

price to $650,000.00 in order to consummate the sale.

52. Defendants misrepresented that the $200,000.00 reduction in price from her original listing price was necessary so that the Buyers could make improvements so they could live in the Property and that no one who intended to reside in the Property would purchase it without the said price reduction.

53. Defendants failed to disclose to Plaintiff their past relationship with the Buyers.

54. Defendants failed to disclose to Plaintiff that they Buyers would be flipping the Property.

55. Defendants failed to disclose to Plaintiff that they would be the listing and selling agents for the Property once re-listed.

56. All of Defendants' misrepresentations and omissions were material and were made or withheld knowingly or with reckless indifference to the truth.

57. Plaintiff justifiably relied upon same, to her detriment and loss.

58. As a direct and proximate result of Defendants' misrepresentations and omissions to disclose material facts, Plaintiff sustained damages.

WHEREFORE, Plaintiff seeks judgment against Defendants, jointly and severally, for compensatory damages in excess of $75,000.00, costs of suit, interest and such other relief as the Court deems necessary or proper.

## COUNT IV – Breach of Contract, in the alternative

59. Plaintiff incorporates herein by reference paragraphs 1 thru 58 above as if set forth at length herein.

60. Plaintiff and Defendants entered into a Listing Agreement.

61. Pursuant to the Listing Agreement, Defendants agreed to endeavor to procure a

purchaser for the Property and Plaintiff agreed to pay Defendants a commission if the property was sold by Defendants during the term of the Listing Agreement.

62. Defendants breached the Listing Agreement by failing to market the Property in the best interests of their customer, Plaintiff.

63. As a result thereof, Plaintiff was deprived of the opportunity to sell the Property for its fair market value.

64. Further, despite Defendants' breaches, Defendants received a commission from the sale of the Property from Plaintiff in the amount of $39,000.00.

WHEREFORE, Plaintiff seeks judgment against Defendants, jointly and severally, for compensatory damages representing the commissions Defendants earned, costs of suit, interest and such other relief as the Court deems necessary or proper.

### COUNT V – Unjust Enrichment, in the alternative

65. Plaintiff incorporates herein by reference paragraphs 1 thru 64 above as if set forth at length herein.

66. Plaintiff paid Defendants a commission on the sale of the Property in the amount of $39,000.00, despite their wrongful conduct by which they brokered the sale for $225,000.00 less than market value, and received a commission on the re-sale by the Buyers to the detriment of Plaintiff.

67. Defendants have been unjustly enriched by the double commission they received on the successive sales of the Property.

68. Defendants' retention of the commissions earned on the sale of the Property is unjust.

WHEREFORE, Plaintiff seeks judgment against Defendants, jointly and severally, for compensatory damages in an amount in excess of $75,000.00, costs of suit, interest and such other relief as the Court deems necessary or proper.

                                                WEIR & PARTNERS LLP

                                      By: _____
                                                Walter Weir, Jr., Esquire
                                                Amy R. Brandt, Esquire
                                                Attorneys for Plaintiff

Dated: May 2, 2017.