# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SONDRA BUSCH, | : | |
| *Plaintiff*, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ALLAN DOMB et al., | : | No. 17-2012 |
| *Defendants*. | : | |

## MEMORANDUM

PRATTER, J.                                                                             December 20, 2017

### INTRODUCTION

The question of conflicted loyalties possibly owed by a real estate broker punctuates this dispute.

A woman contracted with a real estate brokerage firm in connection with efforts to sell her home. After the property was on the market for several months, the brokerage firm advised the woman to substantially decrease the asking price in order to sell the property to a then-willing buyer. The woman followed the firm's advice and sold her home — only to learn, a very short time later, that the buyer had already arranged to resell the property for the woman's original asking price. Worse still, from the original owner's perspective, the brokerage firm had helped the buyer do so (earning a second commission in the process) as part of a longstanding relationship between the firm and the home-flipping buyer.

The woman sued the brokerage firm and the firm's licensee, alleging tort and contract claims. The firm and licensee have filed motions to dismiss. The motions turn, in large part, on familiar rules of contract law: the economic loss doctrine, the gist of the action doctrine, and the parol evidence rule.

For the reasons discussed below, the Court grants the motions to dismiss only as to the count for breach of fiduciary duty. As to all the other counts, the Court denies the motions.

1

# FACTS

In April 2016, Sondra Busch entered into a Listing Agreement with Allan Domb Real Estate ("ADRE"). ADRE, a real estate brokerage firm, agreed to assist in the sale of Ms. Busch's home on Delancey Street in Philadelphia. ADRE advertised the property online for $875,000.

ADRE presented a pair of buyers in August 2016 who made an offer of $675,000. After a home inspection, this offer was reduced to $650,000. ADRE advised Ms. Busch to accept the below-list-price offer on the ground that the buyers would need to make $225,000 worth of improvements to the property. According to ADRE, no one would buy the property without the price reduction.

Ms. Busch accepted the offer. In the transaction, ADRE represented both Ms. Busch and the buyers. All parties consented to this dual agency, which was reflected in the ultimate Agreement of Sale. The Agreement of Sale included a Consumer Notice pursuant to the Real Estate Licensing and Registration Act (RELRA): "As a dual agent, [ADRE] works for both seller/landlord and buyer/tenant. A dual agent may not take any action that is adverse or detrimental to either party." The RELRA Notice further imposed upon ADRE duties to "[e]xercise reasonable professional skill and care," "[d]eal honestly and in good faith," and disclose "all conflicts of interest and financial interests."

Ten days after closing, Ms. Busch learned that the buyers had relisted her former home on ADRE's website. She also learned, for the first time, that the buyers were real estate investors whom ADRE had represented many times in the past. After 19 days back on the market (about eight months after the original Busch-ADRE Listing Agreement), in December 2016, the buyers agreed to sell the property for $875,000 — Ms. Busch's original asking price.

## PROCEDURAL HISTORY

In May 2017, Ms. Busch sued ADRE and Allan Domb, invoking the Court's diversity jurisdiction and asserting five state-law claims. Her amended complaint, at issue here, alleges a host of misrepresentations and omissions by ADRE:

- ADRE misrepresented that $650,000 was a fair sales price.

- ADRE misrepresented that the $225,000 reduction in price was necessary for the buyers to make improvements to the home.

- ADRE did not disclose its longstanding relationship with the buyers.

- ADRE did not disclose that the buyers would flip the property.

- ADRE did not disclose that it would be the buyers' agent for the second sale, creating its own financial interest in the second sale.

Both ADRE and Mr. Domb filed motions to dismiss. The Court heard oral argument on both motions and now grants the motions to dismiss only as to the count for breach of fiduciary duty. As to all the other counts, the Court denies the motions.

## STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. To survive a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The question is not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (citation and internal quotation marks omitted).

In evaluating the sufficiency of a complaint, the Court adheres to certain well-recognized parameters. For one, the Court "must consider only those facts alleged in the complaint and accept all of the allegations as true." *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994). Also, the Court must accept as true all reasonable inferences emanating from the allegations, and view those facts and inferences in the light most favorable to the nonmoving party. *See Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010).

That admonition does not demand that the Court ignore or even discount reality. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678. If a claim "is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008).

## ANALYSIS

Ms. Busch's amended complaint contains counts for (i) statutory consumer fraud, (ii) breach of fiduciary duty, (iii) negligent misrepresentation, (iv) breach of contract, and (v) unjust enrichment. As explained below, the Court denies the motions to dismiss as to all but the count for breach of fiduciary duty. In addition to addressing the counts in turn, the Court denies Mr. Domb's motion to dismiss insofar as it seeks to dismiss Mr. Domb individually from the case.

### I. Count 1: Consumer Fraud (UTPCPL)

Ms. Busch's first count is for violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. § 201-3. To succeed on a claim under the UTPCPL, a private plaintiff must allege that she suffered an ascertainable loss due to the defendant's

4

misconduct, and that her reliance on the defendant's misrepresentations was justifiable. *Walkup v. Santander Bank*, 147 F. Supp. 3d 349, 358 (E.D. Pa. 2015).

ADRE advances three reasons why Ms. Busch's UTPCPL claim should be dismissed: (1) Pennsylvania's economic loss doctrine bars the claim; (2) Ms. Busch has not pleaded an ascertainable loss caused by ADRE's conduct; and (3) the parol evidence rule bars evidence of Ms. Busch's allegedly justifiable reliance. The Court rejects each argument.

**1. The Economic Loss Doctrine Does Not Apply to Ms. Busch's UTPCPL Claim.**

The economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir. 1995). A private claim under the UTPCPL, of course, is not a tort claim. Still, courts are split on whether the economic loss doctrine applies to a UTPCPL claim like Ms. Busch's. Thus, this issue boils down to whether this Court follows Third Circuit Court of Appeals precedent (which arguably holds that the doctrine *does* apply) or Pennsylvania Superior Court decisions (which hold that the doctrine *does not* apply). Because the Court will follow the state-court decisions on this question of state law, the Court holds that the economic loss doctrine does not bar Ms. Busch's UTPCPL claim.

**A. The Third Circuit Court of Appeals and the Pennsylvania Superior Court Are At Odds.**

The Third Circuit Court of Appeals held in 2002 that the economic loss doctrine applies to (and bars) claims under the UTPCPL in which the plaintiff's entitlement flows from a contract. *See Werwinski v. Ford Motor Co.*, 286 F.3d 661, 680–81 (3d Cir. 2002). Going forward, if a defendant's deceptive conduct is "clearly interwoven" with a contract, then the UTPCPL claim is barred. *Tubman v. USAA Cas. Ins. Co.*, 943 F. Supp. 2d 525, 530 (E.D. Pa. 2013).

5

The question whether the economic loss doctrine applies to the UTPCPL, however, is a state-law question. Thus, any federal court's attempt to answer the question is simply a prediction of how the Pennsylvania Supreme Court would rule. Since *Werwinski*, Pennsylvania courts have weighed in — and disagreed with the holding of the Third Circuit Court of Appeals. The first to do so was a panel of the Pennsylvania Superior Court in 2013. *See Knight v. Springfield Hyundai*, 81 A.3d 940, 952 (Pa. Super. Ct. 2013) (holding that UTPCPL claims are not subject to the economic loss doctrine because they are statutory claims that do not sound in negligence). At least one other Superior Court panel and one Pennsylvania trial judge have followed suit. *See Dixon v. Northwestern Mutual*, 146 A.3d 780 (Pa. Super. Ct. 2016); *Toth v. Nw. Sav. Bank*, No. GD-12-008014, 2013 WL 8538695 (Pa. Com. Pl. Mar. 1, 2013) (Wettick, J.); *see also Landau v. Viridian Energy PA LLC*, 223 F. Supp. 3d 401, 412 (E.D. Pa. 2016) (McHugh, J.) ("[S]ix appellate judges in Pennsylvania and a highly regarded trial judge have rejected *Werwinski* as a proper statement of Pennsylvania law.").

**B. Federal District Courts Are Split.**

In the wake of *Knight*, federal district courts are split as to whether the economic loss doctrine applies to UTPCPL claims. *See, e.g.*, *Horne v. Progressive Advanced Ins. Co.*, No. 15-1029, 2015 WL 1875970, at *1 n.1 (E.D. Pa. Apr. 24, 2015) (Kearney, J.) ("[T]he application of the economic loss doctrine to UTPCPL claims is in flux in Pennsylvania.").

Some contend that they are bound by the pronouncement of the Third Circuit Court of Appeals in *Werwinski*. *See, e.g.*, *McGuckin v. Allstate Fire & Cas. Ins. Co.*, 118 F. Supp. 3d 716, 720 (E.D. Pa. 2015) (Beetlestone, J.) ("*Werwinski*'s predication of the Pennsylvania Supreme Court's ruling on the economic loss doctrine remains binding on the district courts in this circuit until either the Pennsylvania Supreme Court or the Third Circuit rules otherwise."); *Yamarick v. Unum Group*, No. 16-6164, 2017 WL 3008751, at *4 (E.D. Pa. July 14, 2017)

(Surrick, J.) ("The Third Circuit's decision in *Werwinski* is binding upon this Court, and we will therefore apply the economic loss doctrine."); *Whitaker v. Herr Foods*, 198 F. Supp. 3d 476, 490 (E.D. Pa. 2016) (Robreno, J.).

Others have evaded the circuit court's holding to follow the decisions of the Pennsylvania Superior Court. *See, e.g.*, *Kantor v. Hiko Energy, LLC*, 100 F. Supp. 3d 421, 427–29 (E.D. Pa. 2015) (Savage, J.) (stating that "*Werwinski* no longer has any vitality" after *Knight* and holding that the economic loss doctrine does not apply to a UTPCPL claim).

**C. Conclusion**

The Court will follow the rulings of the Pennsylvania Superior Court to hold that the economic loss doctrine does not apply to a UTPCPL claim.

This Court is mindful that "in the absence of a clear statement by the Pennsylvania Supreme Court to the contrary or other persuasive evidence of a change in Pennsylvania law," courts within the Third Circuit "are bound by the holdings of previous panels of this court." *Debiec v. Cabot Corp.*, 352 F.3d 117, 131 (3d Cir. 2003). But that rule has "well-established exceptions," including one "where there has been an intervening change in the law." *Landau*, 223 F. Supp. 3d at 412. (citing *In re Pharmacy Benefit Managers Antitrust Litig.*, 582 F.3d 432, 439 (3d Cir. 2009)).

The exception is especially important in the state-law context. "[W]hen we are applying state law and there is persuasive evidence that it has undergone a change, we are not bound by our previous panel decision if it reflected our reliance on state law prior to its modification." *Robinson v. Jiffy Executive Limousine Co.*, 4 F.3d 237, 239–40 (3d Cir. 1993). "[A]lthough state intermediate appellate decisions are not automatically controlling where the highest court of the state has not spoken," the Court "must give serious consideration to the decisions of the intermediate appellate courts in ascertaining and applying state law." *Id.* at 242.

The decisional law on this pending UTPCPL question fits the exception. "As to the precise issue before it, the panel in *Werwinski* was painting on a blank canvas," and that fact alone "should give pause because the intermediate appellate courts of Pennsylvania have [since] twice rejected *Werwinski*." *Landau*, 223 F. Supp. 3d at 413. "We cannot ignore what the Pennsylvania courts have decided and how the law in Pennsylvania has evolved since *Werwinski* was decided." *Kantor*, 100 F. Supp. 3d at 429. To do so would "subvert[] the whole endeavor of predicting state law." *Roberts v. NVR, Inc.*, No. 15-cv-489, 2015 WL 3745178, at *6 (W.D. Pa. June 15, 2015).

Indeed, the Third Circuit Court of Appeals has recognized as much: "No one may properly rely upon what we have held as more than persuasive on a question of Pennsylvania law so long as the Pennsylvania Supreme Court has not ruled upon that legal question." *Aceto v. Zurich Ins. Co.*, 440 F.2d 1320, 1322 (3d Cir. 1971). In short, "when the Pennsylvania intermediate appellate courts have ruled to the contrary and their decisions have not been overruled by the state's highest court, we are no longer compelled to follow the Third Circuit's prediction. . . . *It is state law, not federal law, we must follow*." *Kantor*, 100 F. Supp. 3d at 427 (emphasis added).

The Court's decision to follow holdings of the Pennsylvania Superior Court avoids the perils of forum shopping. "The current divergence between the federal and state courts" on the question whether a UTPCPL claim survives the economic loss doctrine "means that the outcome of a case is currently a function of forum." *Landau*, 223 F. Supp. 3d at 414. The Third Circuit Court of Appeals has instructed district courts to avoid such a situation: "in all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court [should] be substantially the same, so far as

legal rules determine the outcome of a litigation, as it would be if tried in a State court." *Chamberlain v. Giampapa*, 210 F.3d 154, 158–59 (3d Cir. 2000) (quoting *Guar. Trust Co. v. York*, 326 U.S. 99, 109 (1945)).

In our system of *stare decisis*, "[b]eing bound by earlier decisions means occasionally being bound by wrong decisions, too." Paul Watford et al., *Crafting Precedent*, 131 HARV. L. REV. 543, 545 (2017).[1] This is not such an instance. On this question of state law, the Court will follow Pennsylvania state-court decisions to hold that the economic loss doctrine does not bar Ms. Busch's UTPCPL claim.

### 2. Ms. Busch Has Suffered an Ascertainable Loss.

To succeed on her UTPCPL claim, Ms. Busch must demonstrate that she suffered an ascertainable loss.[2] *See Kaymark v. Bank of America*, 783 F.3d 168, 180 (3d Cir. 2015). Put differently, her loss cannot be "speculative." *See Schwarzwaelder v. Fox*, 895 A.2d 614, 619 (Pa. Super. Ct. 2006).

Ms. Busch alleges that ADRE and Allan Domb's fraudulent actions prevented her from selling her home for its fair market value. Roughly two weeks after she sold her home for $650,000, the buyers flipped it for $875,000. This disparity is evidence that she sold her home for less than the price she could have received but for the defendants' influence. By contrast, ADRE argues that this reasoning is speculative; for months, Ms. Busch could not find a buyer for $875,000, so, according to the defense, it is a stretch to say that $875,000 was the fair value of the home.

---

[1] Some have posited that *Werwinski* may have been wrong on the merits even before Pennsylvania appellate courts weighed in. In 2003, then–District Judge Van Antwerpen declined to follow *Werwinski*, detailing the many ways in which *Werwinski* was "not in harmony with Pennsylvania state law." *See O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 275 (E.D. Pa. 2003) (Van Antwerpen, J.). Judge Van Antwerpen joined the circuit court one year later.

[2] Indeed, she must make this showing for her other counts as well. Therefore, the analysis in this section applies across the board.

Ms. Busch has alleged enough to satisfy the ascertainable loss requirement at the motion to dismiss stage. The subsequent sale, at her original asking price, coming so soon after her own reduced-price sale, pushes her claim across the line from merely speculative to ascertainable.

Neither of ADRE's case analogies is persuasive. In the first, *Scharzwaelder*, a couple sold their home but learned, after closing, that their buyer's broker was owned by the buyer's wife. They sued under the UTPCPL, alleging that they could have negotiated a better deal had they known their broker's ownership structure. The court held that the couple's claim was speculative. *Schwarzwaelder*, 895 A.2d at 618–19. Unlike this case, the couple in *Schwarzwaelder* had no evidence that they would have gotten a better deal. Here, on the other hand, the subsequent sale — at Ms. Busch's original asking price, no less — is notable evidence of an ascertainable loss.

ADRE's second case, *Kaymark*, is even further off the mark. There, a mortgagor defaulted on his mortgage payments. The mortgagee brought a foreclosure complaint and listed not-yet-incurred fees as past due. The mortgagor sued under the UTPCPL, alleging unfair or deceptive acts. The court rejected the claim on the ground that the mortgagor "was never deprived of his property and *never paid the disputed fees* alleged to have deprived him of his property." *Kaymark*, 783 F.3d at 180 (emphasis added). Here, on the other hand, Ms. Busch has alleged that she was deprived of the full value of her property. By accepting the buyer's offer of $650,000, she was made to forgo roughly $200,000 in extra value (minus whatever commission she would have owed) — the equivalent, in *Kaymark*, of paying out the disputed fees. The Court therefore finds that Ms. Busch has alleged an ascertainable loss.

### 3. The Parol Evidence Rule Does Not Bar Evidence of Ms. Busch's Justifiable Reliance.

To succeed on her UTPCPL claim, Ms. Busch must demonstrate that her reliance on ADRE's representations was justifiable. *See Walkup*, 147 F. Supp. 3d at 358.[3] If Ms. Busch relied on representations that predated an eventual contract with ADRE, then any evidence of those representations must surmount the parol evidence rule.

In general, the parol evidence rule bars evidence of oral representations made before a contract was executed if (1) the contract contains terms that deal directly with subject matter of oral representation, and (2) the contract represents the parties' entire agreement (in particular, if the contract contains an integration clause). *Atlantic Pier Assocs. v. Boardakan Rest. Partners*, 647 F. Supp. 2d 474, 489 (E.D. Pa. 2009). Apropos of this case, the rule bars evidence not only of oral misrepresentations, but also of nondisclosure. *HCB Contractors v. Liberty Place Hotel Assocs.*, 652 A.2d 1278, 1279 (Pa. 1995).

In this case, Ms. Busch has alleged a goodly number of misrepresentations and omissions that allegedly occurred *after* the Listing Agreement between Ms. Busch and ADRE but *before* the Agreement of Sale between Ms. Busch and the buyers. That timing makes all the difference on this issue.

Because only the Agreement of Sale post-dated the alleged misrepresentations and omission, the parol evidence rule would prohibit evidence of Ms. Busch's reliance only if ADRE was a party to the Agreement of Sale. Accordingly, Ms. Busch argues that the earlier-in-time Listing Agreement provides the entire basis for the contractual relationship between herself and

---

[3] Indeed, some version of this element is part of her claims for breach of fiduciary duty (count 2), negligent misrepresentation (count 3), and unjust enrichment (count 5). Thus, the analysis in this section applies to those counts as well.

ADRE. ADRE, on the other hand, contends that it may rely on the integration clause in the later-in-time Agreement of Sale between Ms. Busch and the buyers.

The Agreement of Sale's integration clause provided that:

> All representations, claims, advertising, promotional activities, brochures or plans of any kind made by Seller, Brokers, their licensees, employees, officers or partners are not a part of this Agreement unless expressly incorporated or stated in this Agreement. This Agreement contains the whole agreement between Seller and Buyer, and there are no other terms, obligations, covenants, representations, statements or conditions, oral or otherwise, of any kind whatsoever concerning this sale.

Agreement of Sale ¶ 25.

The Agreement of Sale was between Ms. Busch and the buyers; ADRE was merely a dual agent to the parties to the contract. The operation of the parol evidence rule, therefore, boils down to this question: May ADRE, as a dual agent, use the Agreement of Sale's integration clause as a shield against a UTPCPL claim by Ms. Busch based on pre–Agreement of Sale conduct?[4]

For two reasons, the text of the integration clause suggests that the answer is no. First, the clause excludes extra-contractual statements by "Seller, Brokers, their licensees, employees, officers or partners" — every party except the buyer. In other words, the clause was designed to curtail claims by the buyer, not the seller. Second, the integration clause states that the Agreement of Sale "contains the whole agreement between Seller and Buyer," making no reference to the agreement between seller and *broker*. Therefore, the Court finds that the parol evidence rule does not operate to bar evidence of Ms. Busch's justifiable reliance on defendants' statements.

---

[4] Or, for that matter, as a shield against claims by Ms. Busch arising under any other theory that requires a showing of justifiable reliance — breach of fiduciary duty (count 2), negligent misrepresentation (count 3), and unjust enrichment (count 5).

The case law does not compel the opposite conclusion. At first blush, the parol evidence rule is available to contractual parties and their agents. *See Blumenstock v. Gibson*, 811 A.2d 1029, 1038 (Pa. Super. Ct. 2002) ("[A] seller's agent may enforce the integration clause and any other exculpatory provision in the written agreement between a seller and a buyer."); *Berardine v. Weiner*, 198 F. Supp. 3d 439, 445-46 (E.D. Pa. 2016) (Dalzell, J.).

Yet, Ms. Busch persuasively distinguishes *Blumenstock*, which is ADRE's best case. There, the seller's agent used the integration clause against a claim by the buyer. Here, on the other hand, ADRE does not seek to use the integration clause against its principal's *counterparty* — it seeks to use the clause *against its principal herself* (Ms. Busch). An integration clause has a different effect as between a buyer and a seller's agent than as between a seller and the seller's agent. Counterparties (and their agents) presumably negotiate integration clauses at arm's length. Principals and agents, on the other hand, do not; to allow an agent to use an integration clause against its principal would leave the principal, relying on her agent's advice, with no recourse.

In addition, ADRE is not a third-party beneficiary of the Agreement of Sale, so ADRE may not enforce the contract as it seeks to do here. The only parties who may enforce a contract are the parties to the contract itself and the third-party beneficiaries of the contract. ADRE is neither. "In Pennsylvania, a party becomes a third-party beneficiary only when both parties to the contract express an intention to benefit the third party in the contract itself." *Berardine*, 198 F. Supp. 3d at 445. In *Berardine*, for example, the contract "contain[ed] an express provision" that one of the brokers would "be paid a brokerage commission at the time of settlement." *Id.* By contrast, ADRE has not pointed to any provision the Agreement of Sale which states that ADRE will be paid a commission at the time of settlement.

13

Therefore, the Court finds that the parol evidence rule does not operate to bar evidence of Ms. Busch's justifiable reliance on defendants' statements.

## II. Count 2: Breach of Fiduciary Duty

ADRE advances five arguments for dismissing Ms. Busch's count for breach of fiduciary duty. Two of them (the parol evidence rule and the requirement of an ascertainable loss) were addressed above in the discussion of the UTPCPL claim. ADRE's remaining arguments are: the economic loss bars the claim for breach of fiduciary duty; real estate brokers acting as dual agents are not fiduciaries; and the gist of the action doctrine bars this claim, which is properly brought as a claim for breach of contract. Because the Court agrees with the two latter arguments by ADRE, the Court need not reach the economic loss argument in order to grant the motions to dismiss the count for breach of fiduciary duty.

### 1. Real Estate Brokers Acting as Dual Agents Are Not Fiduciaries.

ADRE did not owe Ms. Busch fiduciary duties. After explaining the rule for fiduciary duties and concluding that ADRE was not a fiduciary, the Court addresses the parties' arguments about case law and Ms. Busch's argument about RELRA.

No case cited by the parties directly speaks to the question whether dual agents are fiduciaries. However, the general rule is that where "the relationship goes beyond mere reliance on superior skill, and into a relationship characterized by 'overmastering influence' on one side or 'weakness, dependence, or trust, justifiably reposed' on the other side," a fiduciary relationship exists. *Lenau v. Co-eXprise*, 102 A.3d 423, 443 (Pa. Super. Ct. 2014). Put differently, fiduciary duties exist where two parties have "such a disparity in position that the inferior party places complete trust in the superior party's advice and seeks no other counsel, so as to give rise to a potential abuse of power." *Id.*

The relationship between a dual agent and one of its principals does not rise to this level. Indeed, the contract recommended that the buyer and seller each consult with their own real estate attorney before closing — which Ms. Busch did.

The parties cite several cases for the proposition that real estate brokers are or are not fiduciaries. No case is directly on point. For instance, ADRE cites *Ramalingam v. Keller Williams*, 121 A.3d 1034 (Pa. Super. Ct. 2015), for the proposition that a real estate agent is not a fiduciary. But in that case, the agent had extremely limited contact with the transaction; the court held that the agent did not have duties over funds to be placed in escrow because the agent was never entrusted with the funds at all. *Id.* at 1044. Ironically, on some level, the *Ramalingam* case exposes the severity of these defendants' acts in contrast.

But neither of Ms. Busch's cases control the situation here — a disclosed dual agency in which both parties understood and consented to the dual agency. *See Miller v. Cohen*, No. 93-5371, 1996 WL 560525, at *6 (E.D. Pa. Sept. 30, 1996) (holding that it is "axiomatic that a fiduciary relationship exists between a real estate broker and a seller when the broker undertakes to find a purchaser for the seller's property," but in the context of an *undisclosed* dual agency, *id.* at *2); *Onorato v. Wissahickon Park, Inc.*, 244 A.2d 22, 26 (Pa. 1968) (holding that a broker is a fiduciary "to a certain extent," but that a broker cannot be liable for a conflict of interest where the principal has consented to a dual agency).

As a last resort, Ms. Busch notes that provisions of the Real Estate Licensing and Registration Act (RELRA) were reproduced in the Agreement of Sale. The attachment to the Agreement of Sale imposed several RELRA duties on ADRE, including a duty to deal honestly and in good faith and a duty to disclose conflicts of interest.

But RELRA, on its own, does not give rise to a private cause of action. *Schwarzwaelder*, 895 A.2d at 620. Thus, any duties that ADRE had as a result of the RELRA addendum to the Agreement of Sale were *contract* duties. And the contractual nature of these duties puts Ms. Busch's fiduciary claim on a collision course with the gist of the action doctrine, discussed next.

### 2. The Gist of the Action Doctrine Bars the Claim for Breach of Fiduciary Duty.

"The gist of the action doctrine precludes a plaintiff from recasting a breach of contract claim as a tort claim." *Berardine*, 198 F. Supp. 3d at 446. "[T]he nature of the duty breached" — that is, its nature as a tort or as a contract duty — "is determinative of the gist of the action." *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 63 (Pa. 2014). The doctrine precludes a plaintiff from advancing a tort claim if the underlying duty originated with a contract. *Bret Binder v. Weststar Mortgage*, No. 14-7073, 2016 WL 3762710, at *22 (E.D. Pa. July 13, 2016); *DePuy Synthes Sales v. Globus Medical*, No. 17-1068, 2017 WL 1493365, at *5 (E.D. Pa. Apr. 26, 2017). A claim for breach of fiduciary duty, in particular, only survives the gist of the action doctrine "where the fiduciary relationship in question is well-established and clearly defined by Pennsylvania law or policy." *InSyte Medical Technologies v. Lighthouse Imaging*, No. 13-1375, 2014 WL 958886, at *11 (E.D. Pa. Mar. 11, 2014).

The gist of the action question depends on whether ADRE owed Ms. Busch independent fiduciary duties. As explained above, any duties that appear to be fiduciary in nature exist only because of the RELRA addendum to the Agreement of Sale. In other words, the answer to the question "whether the duty came from tort law or from a contract" is contract. *See Brenco Oil, Inc. v. Blaney*, No. 17-cv-3938, 2017 WL 6367893, at *2 (E.D. Pa. Dec. 13, 2017). Because the Court concludes that ADRE did not owe fiduciary duties independent of the contract, the Court holds that the gist of Ms. Busch's action here lies in contract. The count for breach of fiduciary duty is therefore dismissed.

### III.     Count 3: Negligent Misrepresentation

There are four elements to a claim for negligent misrepresentation under Pennsylvania law:

1. The defendant misrepresented a material fact.

2. The defendant knew or should have known that the statement was a misrepresentation.

3. The defendant intended for the plaintiff to rely on the representation.

4. The plaintiff's justifiable reliance led to an injury.

*Gibbs v. Ernst*, 647 A.2d 882, 890 (Pa. 1994). ADRE advances four arguments for dismissing Ms. Busch's Count for negligent misrepresentation. Two of them (the parol evidence rule and the requirement of an ascertainable loss) were rejected above in the discussion of the UTPCPL claim. ADRE's remaining arguments are that (1) the gist of the action doctrine bars this claim, which is properly brought as a breach of contract claim; and (2) the economic loss doctrine bars the claim. For the reasons given below, the Court rejects both arguments.

**1. The Gist of the Claim for Negligent Misrepresentation is that ADRE Violated a General Social Duty.**

As explained above, the gist of the action doctrine requires a court to ask whether the nature of the duty at issue flows from tort or contract. *See Bruno v. Erie Ins. Co*., 106 A.3d 48, 63 (Pa. 2014). For instance, in *Bruno*, an insurance company inspected mold in an insured's home pursuant to a contract. The insurance company (incorrectly) told the insured that the mold was harmless, and the insured relied on that advice to stay in the home. The mold eventually injured the insured, who sued the insurance company for negligent misrepresentation. The court held that the doctrine did not bar the insured's negligent misrepresentation claim because the insurance company had violated a general social duty to avoid carelessly harming others.

17

Likewise, here, it seems that ADRE has a general social duty not to carelessly (or knowingly) misrepresent a fact on which another party might justifiably rely. *See Gibbs v. Ernst*, 647 A.2d 882, 890 (Pa. 1994). ADRE can dispute whether Ms. Busch *justifiably* relied on its representation, but it seems clear that the original *duty* exists.

This differentiates this case from the two cases relied on by ADRE, both of which involve a contract to perform a home installation, promises by the installer to do good work, and eventual shoddy workmanship. *See Young v. Home Depot*, No. 15-5436, 2016 WL 8716423, at *6 (E.D. Pa. Sept. 30, 2016); *Ins. Co. of Greater N.Y. v. Fire Fighter Sales & Serv. Co.*, 312 F.R.D. 394 (W.D. Pa. 2015). But in those cases, unlike here, the duty to do the installation only arose because of a specific contract to install. *Cf. Brenco Oil*, 2017 WL 6367893, at *4 (finding that a law firm that carelessly performed a title search had breached "a general social duty," and therefore that a claim against the firm sounded in tort, not contract, despite a contract obligating the firm to perform the title search) (quoting *Bruno*, 106 A.3d at 71).

2. **The Economic Loss Doctrine Does Not Bar the Claim for Negligent Misrepresentation.**

The economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." *Duquesne Light Co.*, 66 F.3d at 618. The Court has already concluded, immediately above, that ADRE had a general social duty not to carelessly (or knowingly) misrepresent a fact on which Ms. Busch might justifiably rely. Therefore, Ms. Busch's entitlement does not flow "only from a contract." Indeed, "the Pennsylvania Supreme Court has acknowledged that a negligent misrepresentation claim is outside the reach of the economic loss doctrine." *Kantor*, 100 F. Supp. 3d at 427 (E.D. Pa. 2015) (citing *Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 866 A.2d 270, 288 (Pa. 2005)). Instead, "liability for pecuniary loss" attaches to one who "supplies false information for the

guidance of others in their business transactions." RESTATEMENT (SECOND) OF TORTS § 552. Because ADRE's alleged behavior fits the bill, the Court denies ADRE's motion to dismiss the court for negligent misrepresentation.

## IV. Count 4: Breach of Contract

ADRE's only argument as to the claim for breach of contract is that Ms. Busch has not articulated an ascertainable loss. Because the Court concludes, as noted above, that she has certainly done so, the Court denies ADRE's motion as to this count.

## V. Count 5: Unjust Enrichment

Under the doctrine of unjust enrichment, "[a] person who has been unjustly enriched at the expense of another must make restitution to the other." *Wilson Area Sch. Dist. v. Skepton*, 895 A.2d 1250, 1254 (Pa. 2006) (quoting *Binns v. First National Bank of California*, 80 A.2d 768, 775 (Pa. 1951)). Ms. Busch alleges that ADRE was unjustly enriched by receiving a commission on the second sale of the home.

ADRE advances three arguments for dismissing Ms. Busch's count for unjust enrichment. Two of them (the parol evidence rule and the requirement of an ascertainable loss) were addressed and rejected in the discussion of the UTPCPL claim.

ADRE's remaining argument is that the existence of a contract precludes a claim for unjust enrichment. For support, ADRE cites *Peruto v. Santander Bank*, No. 16-4092, 2016 WL 6190964 (E.D. Pa. Oct. 24, 2016). But in that case, the plaintiff alleged that the terms of the contract had ended up worse than terms he was originally promised. In other words, the plaintiff took issue with the terms of the contract itself. Here, on the other hand, Ms. Busch alleges that ADRE's wrongful conduct enabled it to collect a second commission. That allegation is independent of the Listing Contract. Therefore, Ms. Busch's claim for unjust enrichment may proceed.

## VI. Mr. Domb Can Be Liable Despite Not Being a Party to the Listing Agreement.

In his Motion to Dismiss, Allan Domb argues that he cannot be liable to Ms. Busch because he was not a party to the Listing Agreement. All of the counts against Mr. Domb (UTPCPL, fiduciary duty, and negligent misrepresentation) arise out of the Listing Agreement. But because he was not a party to the agreement, he argues that he cannot be held liable.

Ms. Busch counters that, as to those counts, the parties to the Listing Agreement are irrelevant. Each of those counts is for a tort or statutory violation. They are not contract claims, and they arise independent of any contract. And even if the Listing Agreement mattered, Mr. Domb had duties to Ms. Busch as ADRE's disclosed licensee.

The Court agrees with Ms. Busch. Mr. Domb's liability for a statutory claim (UTPCPL) or tort claims (breach of fiduciary duty and negligent misrepresentation) cannot depend on the existence of a contract — let alone his being a party to a contract. At this juncture in the litigation, Mr. Domb cannot use his (non)status under the contract to evade liability for non-contract claims.

### CONCLUSION

For the foregoing reasons, the Court grants the defendants' motions to dismiss only as to the count for breach of fiduciary duty. As to all the other counts, the Court denies the motions.

An appropriate order follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE
