# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SONDRA BUSCH, | : | |
|         *Plaintiff*, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ALLAN DOMB et al., | : | No. 17-2012 |
|         *Defendants*. | : | |

## **MEMORANDUM**

PRATTER, J.                                                                                                                                                           March 9, 2018

### INTRODUCTION

Plaintiff Sondra Busch will not soon be lending support to efforts to improve the public's perception of real estate professionals.

Ms. Busch contracted with defendant ADRE, a real estate brokerage firm, in connection with efforts to sell her home. After the property was on the market for several months, ADRE and its agent, Allan Domb, advised Ms. Busch to substantially decrease her asking price in order to sell the property to a then-willing buyer. Ms. Busch followed ADRE's advice and sold her home — only to learn, a very short time later, that the buyer had already arranged to resell the property for the asking price Ms. Busch had originally set for the home. Worse still, from Ms. Busch's perspective, ADRE had helped the buyer in the resale of the property (earning a second commission in the process) as part of a longstanding relationship between ADRE and the home-flipping buyer.

ADRE and Allan Domb have filed a motion for reconsideration of this Court's December 20, 2017 Memorandum and Order, Doc. Nos. 33 and 34, which partially denied their motions to dismiss. They raise three "clear error[s] of law," *see Howard Hess Dental Laboratories, Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 251 (3d Cir. 2010):

1. **Parol Evidence:** Defendants argue that the Court should have allowed ADRE to enforce the parol evidence rule because ADRE either was in privity with Sondra Busch or was a third-party beneficiary of the Agreement of Sale between Ms. Busch and the buyers of her home.

2. **Economic Loss Doctrine:** The Court should have held that the economic loss doctrine barred Ms. Busch's claim for negligent misrepresentation on the grounds that Ms. Busch and ADRE were in privity of contract and that ADRE is not a professional information provider.

3. **Unjust Enrichment:** Because Ms. Busch and ADRE originally entered into a Listing Agreement to sell Ms. Busch's home, the Court should have precluded any claim for unjust enrichment based on the commission that ADRE earned when it represented the buyer in immediately reselling the home.

For the reasons that follow, the Court denies the motion for reconsideration.

## DISCUSSION

The Court discusses each of ADRE's claimed errors in turn. For substantially the same reasons provided in the December Memorandum, *see* Memorandum, Doc. No. 33, the Court rejects the challenges to its rulings on (1) parol evidence, (2) the economic loss doctrine, and (3) unjust enrichment.

### I. Parol Evidence

Under the parol evidence rule, if the parties to a contract "have integrated their agreement into a single written memorial," then "all prior negotiations and agreements in regard to the same subject matter, whether oral or written, are excluded from consideration." *Martin v. Monumental Life Ins. Co.*, 240 F.3d 223, 233 (3d Cir. 2001); *see also Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 436 (Pa. 2004).

The Court's analysis in this section has three parts. First, the Agreement of Sale between Ms. Busch and the buyers is not fully integrated as to ADRE. Second, ADRE is not a privy to the Agreement of Sale. Third, ADRE is not a third-party beneficiary of the Agreement of Sale.

### A. The Agreement of Sale is not fully integrated as to ADRE.

For the parol evidence rule to apply in the first place, the contract must be "integrated" — meaning that the writing "represents the 'entire contract between the parties.'" *Yocca,* 854 A.2d at 436 (quoting *Gianni v. Russell & Co.*, 126 A. 791, 792 (Pa. 1924)); *see also Lenzi v. Hahnemann Univ.,* 664 A.2d 1375, 1379 (Pa. Super. Ct. 1995) ("A contract is integrated if it represents a final and complete expression of the parties' agreement.").

In this case, the integration clause in the Agreement of Sale provided that:

> All representations, claims, advertising, promotional activities, brochures or plans of any kind made by Seller, Brokers, their licensees, employees, officers or partners are not a part of this Agreement unless expressly incorporated or stated in this Agreement. This Agreement contains the whole agreement between Seller and Buyer, and there are no other terms, obligations, covenants, representations, statements or conditions, oral or otherwise, of any kind whatsoever concerning this sale.

Agreement of Sale ¶ 25.

The Agreement of Sale was not fully integrated as between Ms. Busch and ADRE. As the Court explained in December, "the clause excludes extra-contractual statements by . . . every party except the buyer. In other words, the clause was designed to curtail claims by the buyer, not the seller.'" Memorandum, Doc. No. 33, at 12. The clause integrated the contract as between the *buyer* and ADRE, not as between *the seller* (Ms. Busch) and ADRE.

The Agreement of Sale was not a complete expression of the contract between ADRE and Ms. Busch. As the Court noted in December, "the integration clause states that the Agreement of Sale 'contains the whole agreement between Seller and Buyer,' making no reference to the agreement between seller and *broker*." Memorandum, Doc. No. 33, at 12. Of course, if the parties wanted the Agreement of Sale to be the complete agreement between Ms. Busch and ADRE, they certainly knew how to say so — indeed, they did say so in the Listing

Agreement: "This contract is the entire agreement between Broker and Seller." Listing Agreement ¶ 22. No such statement exists in the Agreement of Sale.

Indeed, the continued viability of the prior Listing Agreement demonstrates that the subsequent Agreement of Sale is not the entire contract between ADRE and Ms. Busch. The Listing Agreement is enforceable as between Ms. Busch and ADRE; after all, the Listing Agreement is the basis for Ms. Busch's unchallenged claim for breach of contract. The integration clause in the Agreement of Sale, by operation of the parol evidence rule, has not wiped away the effect of the Listing Agreement. Yet that is precisely the conclusion ADRE asks for here. It is a conclusion that the Court declines to reach.

### B. ADRE is not a privy to the Agreement of Sale.

The parol evidence rule prohibits the Court from considering prior statements between not only parties to the contract, but also their supposed privies. *See, e.g.*, *Claremont Apartments v. Principal Commercial Funding II*, No. 09-6138, 2010 WL 2364305, at *5 (E.D. Pa. Jun. 8, 2010). The Agreement of Sale "contains the whole agreement between Seller and Buyer." Agreement of Sale ¶ 25. Latching onto this provision, ADRE seeks to step into the shoes of the buyer and enforce the contract as a privy.

But ADRE is not a privy to the Agreement of Sale. "Privity — as the Pennsylvania courts have ascertained — is defined as 'mutual or successive relationships to the same right of property, or such an identification of interest of one person with another as to represent the same legal right.'" *Claremont Apartments*, 2010 WL 2364305, at *8 (quoting *Ammon v. McCloskey*, 655 A.2d 549, 554 (Pa. Super. Ct. 1995)). ADRE certainly has not cited, and the Court cannot locate, any cases holding that a dual agent is a privy to an integration clause between its two principals.

The dual agency relationship is a poor candidate for privity. At the core of the privity relationship are the notions that the interests of principal and agent are aligned and the agent and the principal's counterparty operate at arm's length. But in a dual agency, this alignment is thrown out of whack. As the Court explained in December:

> ADRE does not seek to use the integration clause against its principal's *counterparty* — it seeks to use the clause *against its principal herself* (Ms. Busch). An integration clause has a different effect as between a buyer and a seller's agent than as between a seller and the seller's agent. Counterparties (and their agents) presumably negotiate integration clauses at arm's length. Principals and agents, on the other hand, do not; to allow an agent to use an integration clause against its principal would leave the principal, relying on her agent's advice, with no recourse.

Memorandum, Doc. No. 33, at 13.

In addition, the relationship between ADRE and its dual principals was too distant to support a finding of privity. The relationship was so distant that the Agreement of Sale "recommended that the buyer and seller each consult with their own real estate attorney before closing." Memorandum, Doc. No. 33, at 15. That distance led the Court to rule that the dual agency relationship "does not rise to [the] level" of a fiduciary bond. *Id*. That ruling, made at ADRE's urging, now militates against a finding of privity as well. The Court has already held that the peculiarities of the dual agency relationship relieve ADRE of any duties "stricter than the morals of the market place." *See Meinhard v. Salmon*, 164 N.E. 545, 546 (N.Y. 1928). For similar reasons, ADRE is not a privy to the contract.

**C. ADRE is not a third-party beneficiary of the Agreement of Sale.**

The parol evidence rule not only applies to parties and their privies, but, for more than a century, has also been applied to third-party beneficiaries of a contract. *See Johnson v. Stewart*, 90 A. 349, 353 (Pa. 1914). A party may become a third-party beneficiary in two ways: "where both parties to the contract express an intention to benefit the third party in the contract itself"; or

5

where "the circumstances are so compelling that recognition of the beneficiary's right is appropriate to effectuate the intention of the parties," and either "the performance satisfies an obligation of the promisee to pay money to the beneficiary," or "the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." *Scarpitti v. Weborg*, 609 A.2d 147, 150–51 (Pa. 1992); *see also Guy v. Liederbach,* 459 A.2d 744, 751 (Pa. 1983); RESTATEMENT (SECOND) OF CONTRACTS § 302.

No Pennsylvania case holds that a dual agent is a third-party beneficiary of an agreement of sale. The most analogous case involved a real estate appraiser hired by both parties to a real estate transaction. *See Dressel Assocs., Inc. v. John A. Welsch Real Estate Appraisers, Inc.*, 632 A.2d 906 (Pa. Super. Ct. 1993). Just as the Agreement of Sale in this case noted that ADRE was a dual agent serving both parties, the sales agreement in *Dressel* noted that the parties had hired an appraiser whose "opinion of the fair market value shall be conclusive and binding upon Buyer and Seller." *Id.* at 907. Nevertheless, the court held that the appraiser "was not intended to be a third party beneficiary of the provision in the sales agreement" binding the buyer and seller to the appraisal value. *Id.* at 908. So too here: the mere mention in the Agreement of Sale that ADRE is a dual agent is not proof that ADRE is a third-party beneficiary.

This Court's holding in *Berardine v. Weiner*, 198 F. Supp. 3d 439 (E.D. Pa. 2016), is distinguishable. In *Berardine*, a real estate broker was held to be a third-party beneficiary of a sales agreement — but only after a far greater showing than existed in *Dressel* or than exists here. In particular, "the contract 'contain[ed] an express provision' that one of the brokers would 'be paid a brokerage commission at the time of settlement.' By contrast, ADRE has not pointed to any provision the Agreement of Sale which states that ADRE will be paid a commission at the

6

time of settlement." Memorandum, Doc. No. 33, at 13 (quoting *Berardine*, 198 F. Supp. 3d at 445).

**II.    Economic Loss Doctrine**

The economic loss doctrine does not bar claims for negligent misrepresentation where (1) "information is negligently supplied by one in the business of supplying information" and (2) the recipient "has no direct contractual relationship with the expert supplier of information." *Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 866 A.2d 270, 286–87 (Pa. 2005); *see also* RESTATEMENT (SECOND) OF TORTS § 552 (same).    ADRE challenges Ms. Busch's count for negligent misrepresentation on both fronts.

### A.  Real estate brokers are "professional information providers."

For Ms. Busch to access the exception to the economic loss doctrine for negligent misrepresentation set out in *Bilt-Rite*, ADRE must be a "professional information provider." *See Excavation Techs., Inc. v. Columbia Gas Co.*, 985 A.2d 840, 843 (Pa. 2009).

Courts in Pennsylvania have provided several data points for determining who is a "professional information provider." Lawyers, accountants, and architects all fit the bill. *See Bilt-Rite Contractors*, 866 A.2d at 291; *Excavation Techs.*, 985 A.2d at 843 (Pa. 2009). Car dealerships, potato chip makers, and coffee roasters do not. *See Pannetta v. Milford Chrysler Sales, Inc.*, No. 14-5680, 2015 WL 1296376, at *7 (E.D. Pa. Mar. 23, 2015) (car dealership); *Whitacker v. Herr Foods*, 198 F. Supp. 3d 476, 491 (E.D. Pa. 2016) (potato chip maker); *Partners Coffee Co., LLC v. Oceana Services & Prods. Co.*, 700 F. Supp. 2d 720, 735 (W.D. Pa. 2010) (coffee roaster and seller).

Here, ADRE brokered real estate sales by marketing properties and finding potential buyers.  The Court finds that real estate brokers are professional information providers, whose

clients rely upon the information and advice they provide — just like attorneys, architects, and accountants.

Indeed, a bankruptcy court in Pennsylvania has already reached the same conclusion. *See In re Brownsville Prop. Corp., Inc.*, No. 10-21959, 2013 WL 4010308, at *10–11 (Bankr. W.D. Pa. Aug. 1, 2013). As that court explained:

> Brokers are in the business of conveying information for the guidance of others in their business transactions. Although that is not exclusively what they do, it is certainly a large part of it. Furthermore, . . . brokers have a direct pecuniary interest in doing so because by supplying such information they hope to induce a sale of the subject property and thereby obtain a sales commission.

*Id.* at *11. Therefore, the Court concludes that ADRE is a "professional information provider" for purposes of the negligent-misrepresentation exception to the economic loss doctrine.

### B. No contractual term precludes Ms. Busch from bringing a claim for tort.

A second predicate for this negligent-misrepresentation exception to the economic loss doctrine is that the plaintiff who received the information must have "no direct contractual relationship with the expert supplier of information, and therefore, no contractual recourse if the supplier negligently misrepresents the information." *Bilt-Rite Contractors*, 866 A.2d at 286. If the plaintiff has potential recourse *both* in tort *and* in contract, then "he has at his election *either* a right of action [in tort] *or* a right of action upon the contract under which the information is supplied." RESTATEMENT (SECOND) OF TORTS § 552 cmt. g (emphasis added).

Here, Ms. Busch had no such choice with regard to her claim for negligently supplied information. Although she entered into the Listing Agreement with ADRE, the agreement merely provided that ADRE "will use reasonable efforts to find a buyer for the Property." Listing Agreement ¶ 8(A). The contract does not impose a contractual duty to use reasonable care in supplying information; only tort law supplies such a duty. *Cf. Palco Linings, Inc. v.*

8

*Pavex, Inc.*, 755 F. Supp. 1269, 1271 (M.D. Pa. 1990) ("The rationale of the economic loss rule is that tort law is not intended to compensate parties for losses suffered as result of a breach of *duties assumed only by agreement*.") (emphasis added). She may proceed in tort.

## III. Unjust Enrichment

The doctrine of unjust enrichment does not apply "when the relationship between parties is founded upon a written agreement." *Wilson Area Sch. Dist. v. Skepton*, 895 A.2d 1250, 1254 (Pa. 2006). Put differently, parties to a contract "are not entitled to restitution based upon the doctrine of unjust enrichment because the terms of their agreement . . . define their respective rights, duties, and expectations." *Curley v. Allstate Ins. Co.,* 289 F. Supp. 2d 614, 620–21 (E.D. Pa. 2003) (alterations omitted); *see also Wayne Moving & Storage, Inc. v. Sch. Dist. of Phila.*, 625 F.3d 148, 153 n.1 (3d Cir. 2010) ("[A] party cannot assert a claim of unjust enrichment 'if there is an express contract on the same subject.'") (quoting *In re Penn Cent. Transp. Co.,* 831 F.2d 1221, 1230 (3d Cir. 1987)).

Here, however, Ms. Busch's claim for unjust enrichment is not based on the Listing Agreement between her and ADRE. Instead, she alleges that ADRE was unjustly enriched by recouping a second commission when the buyers of her home resold it at her original asking price. This sets her case apart from *Wilson*, in which the school district could not receive restitution for fees that it had paid under a contract. *See Wilson Area Sch. Dist.*, 895 A.2d at 1253. By contrast, Ms. Busch's claim for unjust enrichment does not seek to recoup any fees paid under the Listing Agreement. As this Court put the matter in December, "Ms. Busch alleges that ADRE's wrongful conduct enabled it to collect a second commission. That allegation is independent of the Listing Contract." Memorandum, Doc. No. 33, at 19. Ms. Busch's claim for unjust enrichment is therefore proper.

9

**CONCLUSION**

For the foregoing reasons, the defendants' motion for reconsideration is denied. An appropriate order follows.

BY THE COURT:


S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE